IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHANE LEE SHEPLER, | ) Civil Action No. 2: 13-cv-00521 |
| Plaintiff, | ) |
| | ) United States District Judge |
| v. | ) Cathy Bissoon |
| | ) |
| WARDEN THOMAS ELBEL, | ) United States Magistrate Judge |
| | ) Cynthia Reed Eddy |
| Defendant. | ) |

REPORT AND RECOMMENDATION

I.     RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Motion for Summary Judgment filed by Defendant Warden Thomas Elbel be granted.

II.     REPORT

A.     Relevant and Material Facts

Plaintiff, Shane Lee Shepler ("Shepler"), an inmate currently incarcerated at the State Correctional Institution in Albion, Pennsylvania, filed this lawsuit pursuant to 42 U.S.C. § 1983. The case stems from events which occurred while Shepler was incarcerated at the Jefferson County Jail.[1]

---

[1]     The summary judgment record is vague as to the status of Shepler during his confinements at Jefferson County Jail. However, the Court takes judicial notice that during the time period involved in his lawsuit Shepler was at times a "convicted prisoner" and at other times a "pre-trial detainee." On September 7, 2011, a probation violation detainer was issued and, as a result, Shepler was detained at the Jefferson County Jail. On September 27, 2011, his probation was revoked, he was re-sentenced, and re-committed to Jefferson County Jail for the remainder of his original sentence. On March 22, 2012, Shepler was paroled from Jefferson County Jail directly to the custody of Turning Point In-Patient Facility. *See* Docket Nos. CP-33-CR-0000301-2010. Therefore, from September 7, 2011, to September 26, 2011, Plaintiff was a pretrial detainee. However, from September 27, 2011, to March 22, 2012, Plaintiff was a convicted prisoner. On May 4, 2012, the Jefferson County Adult Probation Unit requested another detainer and Plaintiff was returned to the Jefferson County Jail. On February 19, 2013,

The case commenced on April 11, 2014, with the filing by Shepler of a Motion for Leave to Proceed *in forma pauperis*. Attached to the motion was a civil rights complaint which named as Defendants (i) Jefferson County Jail Board Member, identified in the body of the Complaint as "Board Member Moon,"[2] and (ii) the Warden of the Jefferson County Jail, Thomas Elbel. Defendants filed a Partial Motion to Dismiss, which was granted in part and denied in part. Three claims survived the 12(b)(6) process.

Shepler's first claim is that in December 2011, Warden Elbel placed him in the Restricted Housing Unit ("RHU") in retaliation for Shepler writing to government entities, including the Pennsylvania Department of Corrections ("DOC") and the Pennsylvania State Police.[3] Shepler's second claim is that in December 2012, he developed a staph infection as a result of using improperly sanitized razors and nail clippers. His final claim is that on October 25, 2011, he was denied water and the use of restroom facilities during mandatory time in the jail indoor recreation yard.

Presently before the Court is Warden Elbel's Motion for Summary Judgment, with Brief in Support (ECF Nos. 65 and 66), Shepler's Response in opposition (ECF No. 71), Warden

---

Shepler was resentenced and his probation was revoked. He was sentenced to "2-1/2 years to 5 years SCI." Therefore, from May 4, 2012, through February 18, 2013, Shepler was once again considered a pre-trial detainee. After his resentencing on February 19, 2013, he was considered a convicted prisoner. Shepler initiated this lawsuit during the time he was incarcerated at SCI-Camp Hill. He has subsequently been transferred to SCI-Albion

[2]   Board Member Moon was dismissed with prejudice on January 13, 2014. *See* Report and Recommendation of December 11, 2013 (ECF No. 37), adopted as the opinion of the Court on January 13, 2014 (ECF No. 42).

[3]   In Shepler's Response to the summary judgment motion, for the first time argues that he "spent the last month" of his incarceration in the Golf Unit in retaliation for writing to an outside entity about his bedding on March 5, 2012. Not only does this argument lack evidentiary support, it is not properly before the Court. Plaintiff's Complaint and Amended Complaint only addressed the alleged retaliation in December of 2011. Plaintiff cannot raise this new issue at this late date, especially in light of discovery being closed.

Elbel's Reply Brief (ECF No. 72), and Shepler's Sur-Reply (ECF No. 73). The issues have been fully briefed and the factual record has been thoroughly developed via Warden Elbel's Concise Statement of Material Facts and Appendix. (ECF Nos. 67 and 68.)

### C. Standard of Review for Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health System v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 460–61 (3d Cir. 1989) (the non-movant must present affirmative evidence—more than a scintilla but less than a preponderance—which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents ( i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex,* 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Garcia v. Kimmell*, 381 F. App'x 211, 213 (3d Cir. 2010) (quoting *Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the Court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). *See also El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007). Importantly, however, in a case such as this one where there is a video recording of the incidents in question, the Court need not adopt the non-movant's version of the facts if the recording "blatantly contradict[s]" the non-movant's version "so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Because Plaintiff is proceeding *pro se*, the Court is required to liberally construe his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nonetheless, this does not require the Court to credit his "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). Thus, for example, mere allegations, without support, are insufficient. Rather, the allegations must be supported by evidence, which the Court will evaluate under the standard described above to determine if there is merit beyond mere conclusions.

### D. Discussion and Analysis

To prevail in a section 1983 action, "a plaintiff must show that defendant deprived him of a right or privilege secured by the Constitution or laws of the United States while acting under color of state law." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 464 (3d Cir. 1989). Here, Plaintiff argues that his constitutional rights were violated when (i) Warden Elbel retaliated against him by placing him in the Restricted Housing Unit ("RHU") for writing to the Pennsylvania Department of Corrections and State Police, (ii) he developed a staph infection

from an improperly-sanitized razor or nail clippers; and (iii) when he was denied water or the use of restroom facilities during mandatory time in the jail indoor recreation yard. As Warden Elbel does not does not dispute that he was acting under color of state law, the only issue before the Court is whether he caused Shepler to suffer deprivations of a constitutional magnitude. The Court considers each claim in turn.

1. *First Amendment Retaliation Claim*

"Retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution . . . ." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). To state a claim for retaliation, an inmate must show that (1) he engaged in some type of constitutionally protected conduct; (2) he was subject of an adverse action by prison officials "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) there was a causal relationship between the two.[4] *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling,* 229 F.3d 220, 225 (3d Cir. 2000)).

Once a plaintiff has made a prima facie case, the burden shifts to the defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (internal quotation and citation omitted). When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult,

---

[4] The crucial third element, causation, requires a plaintiff to prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503–04 (3d Cir. 1997)).

and the decisions of prison officials require deference, particularly where prison security is concerned. *Rauser,* 241 F.3d at 334.

Warden Elbel does not challenge that Shepler engaged in constitutionally protected activity. Rather, Warden Elbel argues that Shepler's retaliation claim fails because he cannot meet the second and third prongs of the required test, i.e., adverse action and causal connection.

To show an "adverse action," the plaintiff must demonstrate that defendant's actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Allah*, 229 F. 3d at 225. Shepler contends that he was placed in the RHU in retaliation for writing letters to various government entities.

The summary judgment reflects that Shepler was transferred from the Foxtrot Unit to the Golf Unit on December 3, 2011, where he remained until December 7, 2011, for a period of approximately five (5) days.[5] The Charlie Unit is the RHU not the Golf Unit. The Golf Unit is a multi-purpose unit consisting of four cells - three double cells and one single occupancy cell typically used for housing of inmates on suicide watch. (Affidavit of Warden Elbel at ¶ 8.) The Golf Unit cells are used for segregation for medical, administrative, and classification purposes. The summary judgment record reflects that the Golf Unit, while not by its nature a disciplinary block, is used for disciplinary purposes when the Charlie Unit is full. Although the Court is not convinced that Plaintiff's placement in the Golf Unit would deter a person of ordinary firmness from exercising his constitutional rights, for purposes of this Report and Recommendation only,

---

[5] According to the Affidavit of Warden Elbel, the Jefferson County Jail is divided into eight (8) units: A ("Alpha"), B ("Bravo"), C ("Charlie"), D ("Delta"), E ("Echo"), F ("Foxtrot"), G ("Golf"), SM ("South Mod"), and NM ("North Mod"). During Shepler's incarceration in 2011 and 2012, the Alpha, Bravo, Echo, and Foxtrot Units were general population blocks. Alpha Unit cells are used for female inmates. The Charlie Unit is the Restrictive Housing Unit and the Golf Unit is a multi-purpose unit. See ECF No. 68-3, Exhibit C.

and giving Shepler the full benefit of his *pro se* status, Shepler's allegations are sufficient to constitute adverse action.

In analyzing the third element, the Court must determine whether there is a causal connection between Shepler's constitutionally protected activity and his placement in the Golf Unit. The Court employs a burden-shifting regime to determine whether a causal link exists. The prisoner bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him or retaliate against him. *See Rauser*, 241 F.3d at 334 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 87 (1977)). The burden then shifts to the defendant to prove by a preponderance of the evidence that he would have taken the same action even in the absence of the protected activity. *See id.* If defendant proves that he would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest, defendant will prevail in the retaliation action. *See id.* at 334.

The Court agrees with Warden Elbel that Shepler's claim fails on this prong as there is no summary judgment evidence that a causal link exists. First, Shepler admits that correction officers told him he was being moved to the Golf Unit for medical purposes. The summary judgment medical evidence confirms that Shepler had a skin condition at the time of his transfer. In fact, on November 30, 2011, Plaintiff requested medical treatment for this condition. The following day, he was seen by the medical staff and it was found that Plaintiff had a "rash all over [his] body." (ECF No. 68, Exhs. H and I).

Next, the timing of Plaintiff's transfer does not support his retaliation claim. The summary judgment evidence of record reflects that on December 5, 2011, Plaintiff received a letter from Prison Inspector Douglas L. Crowley of the Pennsylvania Department of Corrections

("DOC") at Camp Hill. (ECF No. 68-G (DOC Letter); Ex F (Mail Log - documenting date of receipt.) Warden Elbel was copied on Inspector Croley's letter. It is a reasonable inference that Warden Elbel would have been aware that Plaintiff had been writing letters as of that date. However, critical to Shepler's claim, is that the summary judgment record evidence reflects that he had been in the Golf Unit for two (2) days by the time the DOC letter was received.

Moreover, the summary judgment evidence of record reflects that Warden Elbel had been copied on previous letters from the DOC to Shepler responding to his complaints regarding his conditions of confinement at the Jefferson County Jail, and Shepler had not been placed in the Golf Unit or the RHU as a result of those letters nor was Shepler ever stopped from writing his letters. Shepler's Mail Log reflects that during his incarceration at Jefferson County Jail he wrote to the DOC, the Pennsylvania State Police, the ACLU, the Prison Society, USA Today newspaper, and various elected officials. (*Id*. at ¶ 40-41; Exh. F - Mail Log.)

Shepler also relies on Warden Elbel's response to his December 6, 2011, inquiry as evidence of a retaliatory motive. Specifically, Shepler wrote:

> I am under the understanding by Sibbel, Rhinehart, Clark (all C/O's) that I am held in Golf ISU under medical isolation status and by word of medical they have NOT put me here and never knew I was put here under medical status? I'd like to know and see PAPER proof of the reasoning of my placement in Golf Isolation Block? Thanks.

(Exh. 68-11, Request Slip) (emphasis in original). Warden Elbel responded, "No proof provided." *Id.*

Furthermore, the summary judgment record is clear that Warden Elbel, even in the absence of protected activity, would have made the same decision to transfer Shepler to the Golf Unit based on the need for medical segregation. According to the summary judgment record, Shepler was moved to the Golf Unit on December 3, 2011, because he was covered with a rash

all over his body and in the Golf Unit he would be isolated from the general population inmates. According to Jefferson County Policy O-327, inmates with suspected infectious or communicable diseases are to be isolated from other inmates. (*Id*. at ¶ 24.) Shepler was seen by Susen Rossin, M.D., on December 5, 2011, and prescribed Claritin and Flonase. According to Warden Elbel's Affidavit, Shepler was returned to the Delta Unit, a general population unit, when the Warden "was satisfied that Shepler did not have a condition that would pose a risk to the security of the facility." (*Id.* at ¶ 36.)[6] According to Shepler's housing documents, he was in the Golf Unit from 1:44 pm on December 3, 2011 until 10:23 pm on December 7, 2011 - a total of four days, nine hours, and thirty-nine minutes. (*Id*. at ¶ 38.)

For all these reasons, it is recommended that the motion for summary judgment with respect to Shepler's retaliation claim be granted.

2. *Conditions of Confinement Claims*

a. <u>Improperly Sanitized Razor</u>[7]

Shepler contends that he contracted a staph infection in December 2012 from his razor, which was improperly sanitized. Because Plaintiff had been returned to Jefferson County Prison in May 2012, on a probation detainer, and was not re-sentenced until February 18, 2013, he is

---

[6] Warden Elbel also states in his Affidavit that "Inmates can become fearful of contracting a disease from an inmate who appears to have an infectious or communicable disease. Even if inmates' fears are unwarranted, they have the potential to cause security concerns and disrupt the orderly functioning of the Jail." (ECF No. 68-3, at ¶ 23.) Shepler's medical records reflect that on March 3, 2013, Shepler was brought to the Medical Department "regarding picking at skin making sites bleed DI - <u>complaints from other pt's in block</u>." (ECF No. 68-9 at 11) (emphasis added).

[7] Because Shepler does not allege that he contracted an infection from nail clippers, it is recommended that summary judgment be granted on that claim. Shepler has not alleged that he suffered a legally cognizable harm from the use of nail clippers.

considered a pretrial detainee at the time of this event.[8] *See Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (*Hubbard I*) (stating that claims that arose while a plaintiff was a pretrial detainee must be prosecuted under the Due Process Clause, while claims that arose after he was sentenced are analyzed under the Cruel and Unusual Punishment Clause). While recognizing that the case law is unclear as to whether the Fourteenth Amendment provides more measure of additional protections for pretrial detainees above what the Eighth Amendment affords convicted prisoners, the Court in an abundance of caution, will analyze this claim under the Due Process Clause because the Court of Appeals for the Third Circuit has hinted that a pretrial detainee's "due process rights are at least as broad, if not broader, than his rights under the Eighth Amendment." *Tapp v. Proto*, 404 F. App'x 563, 566 (3d Cir. 2010) (citing *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2010)).[9]

Under the Fourteenth Amendment, when a pretrial detainee complains about the conditions of his confinement, courts are to consider whether the conditions "amount to punishment prior to an adjudication of guilt in accordance with law." *Hubbard I*, 399 F.3d at 158. The Fourteenth Amendment standard of unconstitutional punishment, like the Eighth

---

[8] The standard to apply when evaluating conditions of confinement imposed on pretrial detainees is not clear and has been the subject of recent scholarly debate. Catherine T. Starve, The Conditions of Pretrial Detention, 161 U. Pa. L.Rev. 1009 (2013). However, the United States Supreme Court and the Court of Appeals for the Third Circuit have unequivocally held that the Fourteenth Amendment due process standard is at least as protective as the Eighth Amendment cruel and unusual punishment standard when analyzing conditions of confinement. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979) ("pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners"); *Stevenson v. Carroll*, 495 F.3d 62, 70 (3d Cir. 2007) ("the protections due to sentenced inmates provide a floor for what pretrial detainees may expect").

[9] The Court notes that Warden Elbel analyzed this claim under only the Eighth Amendment standards. Even if the Court were to analyze the claim under the Eighth Amendment, the conclusion would be the same. Shepler has failed to establish a constitutional violation with regard to his alleged unsanitary conditions of confinement claim.

Amendment's cruel and unusual punishment standard, contains both an objective component and a subjective component:

> Unconstitutional punishment typically includes both objective and subjective components. As the Supreme Court explained in *Wilson v. Seiter,* 501 U.S. 294 . . . (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind [.]" *Id*. at 298. . . . The Supreme Court did not abandon this bipartite analysis in *Bell*, but rather allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

*Stevenson v. Carroll,* 495 F.3d 62, 68 (3d Cir. 2007).

The medical record evidence reflects that Shepler was treated on December 31, 2012, for a right eye lesion. The medical record note of that date reflects that Shepler "has had several [lesions] on face, but this one big." Shepler was treated with Bactrin, an antibiotic, and within four (4) days the infection subsided.

The medical evidence of record reflects that Shepler had been treated for a series of skin lesions for several weeks leading up to the eye lesion. For example, on November 27, 2012, it was noted that he "Picks at arms, legs, head. Picks while sleeping." At that time, it was noted that he had "multiple scabs on head, arms, legs." (ECF No. 68-9.) On December 17, 2012, Shepler complained of lesions on his skin. On examination, the lesions were believed to be neurodermatitis and it was noted that Plaintiff had been scratching due to "mental health meds." On December 21, 2012, Plaintiff had a mental health examination during which it was noted that he was "biting lips @ night and digging."

The Court finds that Shepler has failed to satisfy the objective component necessary to establish a Due Process violation because he cannot produce any evidence, other than his own

assertions, that his eye lesion was causally connected to his use of an allegedly "unsanitized" razor. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (plaintiff must demonstrate that injury resulted from the challenged prison practice)). Shepler does not know what disinfectant is used to sterilize inmates' disposable razors. His belief that the disinfectant did not kill staphylococcus is pure speculation. Shepler produced no evidence that the razor sanitization and storage procedure utilized at the Jefferson County Jail falls outside accepted correctional practices.

Moreover, there is no evidence of record from which a jury could reasonably conclude that Plaintiff's eye infection was caused by the use of an unsanitized razor. Rather, the medical record indicates that Shepler had been treated for a series of skin lesions for weeks leading up to the eye lesion. Thus, the Court finds that Shepler's claim is unsubstantiated and recommends that summary judgment be granted on this claim.

        b.       <u>Conditions in Prison Recreation Yard</u>

This claim arises from an incident on October 25, 2011, at which time Plaintiff was considered a convicted prisoner. As such, this claim is governed by the Eighth Amendment. Plaintiff alleges he was denied water and the use of restroom facilities during mandatory time in the jail indoor recreation yard.

To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) An objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, water, shelter. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 419 (3d

Cir. 2000); *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992) (holding that, at a minimum, correctional institutions must provide inmates with "adequate food, clothing, shelter, sanitation, medical care, and personal safety"). Furthermore, to establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference. *Farmer,* 511 U.S. at 837.

A plaintiff can satisfy the objective component if he can show that the alleged conditions of confinement deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Rhodes*, 452 U.S. at 347-48; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). However, the Constitution does not mandate that the prisoners be comfortable while incarcerated. *Rhodes*, 452 U.S. at 349. Prison conditions that are "restrictive" or "harsh" are merely part of the penalty that criminal offenders pay for their offenses. *Id*. at 347.

The subjective component requires that the defendant acted with "deliberate indifference," which imputes a state of mind of reckless disregard on the actor. *See Farmer*, 511 U.S. at 835; *see also Wilson*, 501 U.S. at 303. An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials were aware of substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." *Ingalls v. Florio,* 968 F. Supp. 193, 198 (D.N.J. 1997).

In assessing prisoner allegations of unconstitutional conditions of confinement, the United States Supreme Court has noted that some complained-of conditions amount to no more than a "de minimis level of imposition with which the Constitution is not concerned." *Ingraham v. Wright,* 430 U.S. 651, 674 (1977). Moreover, the Supreme Court has explained that it is

necessary to consider the duration of the plaintiff's exposure to the complained-of condition. *See Hutto v. Finney*, 437 U.S. 678, 686 - 87 (1978).

The summary judgment evidence reflects that on October 25, 2011, Shepler and the other inmates in the Foxtrot Unit were placed in the indoor recreation yard for approximately three (3) hours, during which time two masonry blocks in the walls of the Foxtrot Unit were being repaired. There is no restroom in the indoor recreation yard. The inmates were instructed to use the restroom before they went to the yard and Shepler testified in his deposition that he used the restroom as suggested. (Exh. N - Depo of Pl at 50).

In this case, the evidence shows that Shepler was in the indoor recreation yard for approximately three (3) hours. The Court finds that the alleged deprivations fail to satisfy the objective component necessary to state an Eighth Amendment claim. Federal courts have consistently held that isolated denials of necessities in prison for a short duration do not rise to the level of cruel and unusual punishment in violation of the Eighth Amendment. *See, e.g., Banks v. Mozingo*, 423 F. App'x 123, 127–28 (3d Cir. 2011) (finding that denial of basic necessities such as running water, a mattress, clothes and a blanket on several separate occasions did not rise to the level of an Eighth Amendment violation); *Adderly v. Ferrier*, 419 F. App'x 135, 139–40 (3d Cir. 2011) (finding that denial of clothing, toiletries, legal mail, mattress and shower for seven days did not constitute Eighth Amendment violation); *Chavarriaga v. New Jersey,* Civil Action No. 12-4313, 2014 WL 1276345 (D.N.J. March 27, 2014) (finding that denial of water and clothing for three-day period was not an Eighth Amendment violation); (*Clemens v. Lockett*, Civil Action No. 11–1482, 2013 WL 6230648, *4 (W.D.Pa. Dec. 2, 2013) (finding that denial of showers for nine days was not an Eighth Amendment violation); *Sloan v.*

*Sobina*, Civil No. 09–100 Erie, 2011 WL 5304137, *6 (W.D. Pa. Oct.11, 2011) (finding no Eighth Amendment violation where plaintiff was deprived of water, hygiene, and clothing for a period of seven days); *Schaeffer v. Schamp*, Civ. No. 06–1516, 2008 WL 2553474, at *6 (W.D. Pa. June 25, 2008) (holding that plaintiffs "claims that he was placed in a hard cell for ten days without a mattress, soap, toilet paper, running water, legal supplies, his prescription medication and only received one meal a day" were insufficient to constitute an Eighth Amendment violation); *Lane v. Culp*, 2007 WL 954101, at *4–5 (W.D.Pa. Feb.15, 2007) (holding that denial of running water, clothing and bedding for seven days did not rise to the level of a constitutional violation); *Allebach v. Sherrer*, Civ. No. 04–287, 2005 WL 1793726, at *4 (D.N.J. July 27, 2005) (holding that denial of running water, religious items, visitation, recreation, use of the telephone, mattress and clothing for thirty-six days was not cruel and unusual punishment under the Eighth Amendment when evidence showed that the plaintiff's nutritional need were met and that he was afforded living and hygienic conditions which were not injurious to him). *See also Williams v. Delo,* 49 F.3d 442, 444–47 (8th Cir. 1995) (finding no Eighth Amendment violation where prisoner was placed in a strip cell without clothes, the water in the cell was turned off and the mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld).

Thus, the Court finds that the isolated incident of October 25, 2011, was of very short duration, and the denial of water and the use of restroom facilities during that limited time does not rise to the level of an Eighth Amendment violation. Accordingly, this Eighth Amendment claim fails to state a cognizable claim of a constitutional deprivation that would entitle Shepler to relief. The Court recommends that summary judgment be granted on this claim.

**III.     Conclusion**

For the reasons stated above, it is respectfully submitted that Defendant's Motion for Summary Judgment be granted in its entirety.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed until **February 6, 2015**, to file objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to timely file objections will constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

                                                                                           s/Cynthia Reed Eddy
                                                                                           Cynthia Reed Eddy
                                                                                           United States Magistrate Judge

January 20, 2015

cc:     SHANE LEE SHEPLER
        KX 8935
        SCI Albion
        10745 Route 18
        Albion, PA 16475-0002
        (via U.S. First Class Mail)
        Marie Milie Jones
        JonesPassodelis, PLLC
        (via ECF electronic notification)

        Michael R. Lettrich
        JonesPassodelis PLLC
        (via ECF electronic notification)